# IN THE COURT OF APPEALS OF IOWA

No. 19-0642
Filed May 13, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**QUINTIN DEMILO CLEMONS,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows, Judge.

A defendant appeals his conviction for possession or conspiracy to possess marijuana with intent to deliver. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

Quintin Clemons appeals his conviction for possession or conspiracy to possess marijuana with intent to deliver. We determine Clemons's conviction may be affirmed on the ground he conspired to possess marijuana with intent to deliver, which he has not challenged on appeal. We also find there is sufficient evidence to support the conviction for the alternate theory of possession of marijuana with intent to deliver. We determine Clemons's claim of ineffective assistance of counsel should be preserved for possible postconviction-relief proceedings because the record is inadequate to address his claim in this direct appeal. We conclude the district court adequately expressed the reasons for Clemons's sentence. Accordingly, we affirm Clemons's conviction and sentence.

## I.     Background Facts & Proceedings

In the late evening hours of August 10, 2018, Corporal Brandon Koepke of the Davenport Police Department was on patrol near a venue that was hosting a concert. He stopped a red Chevy Impala because it had dark-tinted windows.[1] Chrisann Hughes, the driver, testified that when the car was stopped, she took a bag of marijuana that was in the center armrest of the vehicle and stuck the bag in her pants. Corporal Koepke testified that when he first approached the vehicle he noticed a faint odor of marijuana. Clemons was in the front passenger seat in the vehicle. He had his seat reclined so that "it was almost touching the back seat."

Corporal Koepke went back to his squad car to run the information for Clemons and Hughes through his computer. When he returned to the vehicle, he

---

[1] Corporal Koepke tested the windows with a meter and gave the driver a citation for having excessively dark windows.

"could smell a very strong odor of marijuana coming from the vehicle." He had Hughes get out of the vehicle, and she gave him a bag containing 15.6 grams of marijuana, which she had in her pants.[2] The bag was ripped, and some of the marijuana was coming out of the bag.

Corporal Koepke called for backup. Officers searched the Chevy Impala. In the passenger-side door next to where Clemons was sitting, officers found three plastic baggies with the corners torn off. In the map pocket located directly behind the driver's seat, officers found a gallon-size bag with marijuana residue and a digital scale with marijuana residue. With his seat reclined, Clemons would have been able to reach the gallon-size bag and the digital scale. Corporal Koepke testified these would be difficult for Hughes to reach given the location. Both Clemons and Hughes claimed to own the scale. Clemons had $986 in cash bundled in his pocket—one bundle with $40, one bundle with $60, one bundle with $65, and one bundle with $821. Clemons and Hughes were arrested. At the jail, an additional three grams of marijuana were found on Hughes.

Clemons was charged with possession of marijuana with intent to deliver or conspiring with another to possess marijuana with intent to deliver, in violation of Iowa Code section 124.401(1)(d) (2018). The State also alleged Clemons was an habitual offender.

Clemons waived his right to a jury trial, and the case was tried to the court. Corporal Koepke testified the amount of marijuana carried by Hughes did not correspond to personal use. The marijuana was originally located in the

---

[2] Hughes subsequently pled guilty to possession of marijuana.

compartment between Hughes and Clemons. The three baggies with the corners missing, which indicated drug sales, were near where Clemons was sitting. The officer stated baggies and digital scales are often used in the sale of controlled substances. These items were accessible to Clemons in the vehicle. The officer also stated that persons involved in the sale of drugs often carried bundles of cash.

Clemons testified he used the digital scale to weigh marijuana before he smoked it. Hughes stated Clemons had a large amount of cash because he receives Social Security disability benefits. Clemons denied saying he owned the digital scale. He also stated he had cash from a social security check. He stated he had the money in bundles because he wanted to buy tickets for the concert. The bundles of cash, however, did not correspond to the price of the tickets nor to the amount of social security payments Clemons receives each month.

The district court found Clemons guilty of possession or conspiracy to possess marijuana with intent to deliver, as an habitual offender.[3] Clemons was sentenced to a term of imprisonment not to exceed fifteen years. He now appeals.

## II.    Sufficiency of the Evidence

Section 124.401(1) applies when a person possesses a controlled substance with intent to deliver or "conspire[s] with one or more persons" to possess a controlled substance with intent to deliver. Clemons argues that the State did not adequately show he possessed marijuana with intent to deliver. Specifically, he argues the State did not show he had actual or constructive possession of marijuana.

---

[3] After a colloquy, Clemons stipulated to his previous offenses.

**A.** The State contends there is sufficient evidence in the record to show Clemons and Hughes conspired to possess marijuana with intent to deliver.[4] Conspiracy is an alternative means of violating section 124.401(1). *State v. Maghee*, 573 N.W.2d 1, 7 (Iowa 1997). The State also contends there is sufficient evidence to support a conviction under the alternate theory. We review claims challenging the sufficiency of the evidence to support a conviction for the correction of errors of law. *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018).

The district court found Clemons guilty under both alternatives, possession with intent to deliver and conspiracy to possess with intent to deliver.[5] When an offense is based on alternative theories, an argument must be raised challenging the sufficiency of the evidence on each theory. *See State v. Schlitter*, 881 N.W.2d 380, 390 (Iowa 2016). In order to successfully show his conviction is not supported by substantial evidence, Clemons would need to show there was insufficient evidence in the record to support either theory. However, Clemons has only challenged the sufficiency of the evidence on one theory—possession of marijuana

---

[4] In order to show a conspiracy to possess marijuana with intent to deliver, the State was required to show (1) Clemons and Hughes agreed to possess marijuana with intent to deliver; (2) they entered into the agreement with the intent to promote or facilitate the possession of marijuana with intent to deliver; (3) Clemons or Hughes committed an overt act to accomplish the offense; and (4) neither of them was a law enforcement agent or assisting a law enforcement agent when the conspiracy began. *See State v. Corsi*, 686 N.W.2d 215, 219 (Iowa 2004) (citing *State v. Speicher*, 625 N.W.2d 738, 741 (Iowa 2001)).

[5] On the record, the district court found the State had proved beyond a reasonable doubt that the defendant constructively possessed marijuana with the intent to distribute it and conspired to possess with intent to distribute marijuana. Following its findings of fact, the court stated, "Accordingly, the Court finds the defendant guilty of Possession with Intent to Distribute Marijuana, as charged in Count I." The written verdict form corrected the oral conviction, reciting that defendant was convicted as charged in Count I, possession or conspiracy to possess a controlled substance, marijuana, with intent to deliver, as an habitual offender.

with intent to deliver. In his appellate brief, he does not raise an argument that there is insufficient evidence to support his conviction on the alternative ground of conspiracy.

By failing to challenge the sufficiency of the evidence to support his conviction under the theory he conspired to possess marijuana with intent to deliver, Clemons has waived this issue on appeal. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *State v. Childs*, 898 N.W.2d 177, 191 (Iowa 2017) ("The waiver doctrine, expressed in our rules of appellate procedure, similarly advances interests of judicial economy by limiting our review to issues actually argued on appeal."). We determine Clemons's conviction under section 124.401(1)(d) may be affirmed on the ground he conspired to possess marijuana with intent to deliver, which he has not challenged on appeal.

**B.** Because we affirm the conviction on the alternate theory of conspiring to possess marijuana with the intent to deliver, we need go no further. However, we take the opportunity to address the conviction under the alternate theory of possession with intent to deliver. Actual possession occurs when the controlled substance is found on the defendant's person. *State v. Atkinson*, 620 N.W.2d 1, 2 (Iowa 2000). Constructive possession occurs when the defendant has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it. *State v. Webb*, 648 N.W.2d 72, 81 (Iowa 2002). It is undisputed here that the defendant did not have actual possession of the marijuana because the officer did not find the controlled substance on his person. We are left with whether the defendant had constructive possession. On the facts

on this case, we find there is sufficient evidence in the record to support Clemons's conviction on the ground of possession of marijuana with intent to deliver.

"The existence of constructive possession turns on the peculiar facts of each case." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016). When the premises in question are jointly occupied, the location of the controlled substance alone is not sufficient to show possession. *State v. Thomas*, 847 N.W.2d 438, 443 (Iowa 2014). In such a case, we additionally consider:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Id.* "These factors are not exclusive, however, and merely act as a guide." *Id.*

When the "premises" involve a motor vehicle, a court may consider these additional factors: (1) whether the contraband was in plain view; (2) whether it was with the accused's personal effects; (3) whether it was found on the same side of the car seat as the accused or immediately next to him; (4) whether the accused was the owner of the vehicle; and (5) whether there was suspicious activity by the accused. *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004) (citing *Atkinson*, 620 N.W.2d at 4). All of these factors are only a guide in determining whether the State has established constructive possession. *Id.* And "[e]ven if some of these facts are present, we are still required to determine whether all of the facts and circumstances . . . allow a reasonable inference that the defendant knew of the controlled substance presence and had control and dominion over [it]." *Id.* (ellipsis in original) (citation omitted); *see also State v. Reeves*, 209 N.W.2d 18, 22 (Iowa

1973) ("Knowledge of the narcotic character . . . of the drug, as well as of their presence . . . may be shown by the conduct, behavior and declarations of the accused.").

Constructive possession cannot rest on mere proximity to the controlled substance. *State v. Cashen*, 666 N.W.2d 566, 572 (Iowa 2003); *see also Atkinson*, 620 N.W.2d at 3–4. Moreover, furtive movements alone cannot support a finding of constructive possession. *Atkinson*, 620 N.W.2d at 4. In addition, the right to maintain control is something more than the "raw physical ability" to exercise control over the controlled substance. *State v. Bash*, 670 N.W.2d 135, 139 (Iowa 2003). Rather, the accused must have "some proprietary interest or an immediate right to control or reduce the controlled substance to the [accused's] possession." *Id.*

The marijuana was within close reach of Clemons. The baggies were in a location next to Clemons. Hughes testified that before the vehicle was stopped, the marijuana was in the armrest of the vehicle, which was between Hughes and Clemons. It was equally accessible to the driver and the passenger. The plastic baggies with the corners torn off were in the front passenger door, immediately adjacent to where Clemons was sitting in the vehicle. Because his seat was reclined back so far, Clemons had access to the digital scale with marijuana residue and the gallon-size bag with marijuana residue, which were approximately a foot and a half away from Clemons. At the scene, Clemons told an officer he owned the digital scale. Furthermore, the amount of cash held by Clemons, located in separate bundles, could be associated with the sale of a controlled substance. Although Hughes claimed ownership of the marijuana, she was unable

to indicate the amount of marijuana in the bag, but she claimed to have purchased such that same day.

Considering the evidence in the light most favorable to the State, we determine there was substantial evidence in the record to support Clemons's conviction for possession of a controlled substance with intent to deliver and to allow a reasonable inference that the defendant knew of the controlled substance's presence and had control and dominion over it. "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019) (citation omitted).

### III. Ineffective Assistance of Counsel

Clemons claims he received ineffective assistance because defense counsel did not file a motion to suppress.[6] He asserts defense counsel should have argued the search and seizure of the cash in his pocket was unconstitutional under the federal and Iowa Constitutions. He claims the evidence obtained from the search should have been suppressed. Clemons also contends he is entitled to relief under the federal plain error doctrine.

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to

---

[6] Iowa Code section 814.7 (2020), as amended, removes a defendant's ability to pursue a claim of ineffective assistance of counsel on direct appeal. This amendment became effective on July 1, 2019. *State v. Macke*, 933 N.W.2d 226, 230 (Iowa 2019). The new amendment does not apply to cases appealed before the effective date of the statute. *Id.* at 231. We find the recent statutory amendment does not apply to this case.

perform an essential duty and (2) prejudice resulted. *Id.* A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *See State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

The State asserts this issue should be preserved for postconviction-relief proceedings. We normally preserve claims of ineffective assistance of counsel for postconviction-relief proceedings. *State v. Trane*, 934 N.W.2d 447, 465 (Iowa 2019). We resolve claims on direct appeal only when the record is adequate. *State v. Haas*, 930 N.W.2d 699, 703 (Iowa 2019). By preserving claims of ineffective assistance for postconviction proceedings, "an adequate record of the claim can be developed." *State v. Harrison*, 914 N.W.2d 178, 209 (Iowa 2018). This gives defense counsel an opportunity to explain the actions taken in the case. *Trane*, 934 N.W.2d at 465. "Normally, cases involving issues of trial strategy and tactical decisions require postconviction proceedings to develop the record adequately." *State v. Hopkins*, 860 N.W.2d 550, 556 (Iowa 2015).

The present record does not contain information concerning the circumstances that led to a search of Clemons's pockets. Corporal Koepke was asked, "You eventually did a search of the defendant, is that correct?" and he stated, "Correct." Clemons testified, "I stood out, he searched me, he found the money in my pocket."

There was no evidence concerning the basis for the decision to search Clemons. The evidence does not show if Corporal Koepke was conducting a pat-down search for weapons or if he had already decided to arrest Clemons and was conducting a search incident to arrest. Furthermore, the record does not show whether Clemons consented to the search. Additionally, defense counsel may

have had strategic or tactical reasons for deciding not to file a motion to suppress. "[A] lawyer is entitled to his day in court, especially when his professional reputation is impugned." *See State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978).

We determine Clemons's claim of ineffective assistance of counsel should be preserved for possible postconviction-relief proceedings because the record is inadequate to address his claim in this direct appeal.

### IV.    Sentencing

Clemons claims the district court abused its discretion by failing to adequately disclose the reasons for his sentence.

Under Iowa Rule of Criminal Procedure 2.23(3)(d), a court must "state on the record its reason for selecting the particular sentence." *State v. Hill*, 878 N.W.2d 269, 273 (Iowa 2016). "This requirement ensures defendants are well aware of the consequences of their criminal actions." *State v. Thompson*, 856 N.W.2d 915, 919 (Iowa 2014). "Most importantly, the sentence statement affords our appellate courts the opportunity to review the discretion of the sentencing court." *Id.* The district court may satisfy this requirement either by stating its reasons orally on the record or by including the reasons in its written sentencing order. *Id.* "[A] 'terse and succinct' statement may be sufficient, 'so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion.'" *State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015) (citation omitted).

The State requested that Clemons be incarcerated. The defendant asked to be placed on probation. Clemons noted he was on probation at the time of the offense but asked to be placed on probation again. The presentence investigation

report (PSI) recommended that Clemons be incarcerated. During the sentencing hearing the district court stated, "The reasons for the sentence are Mr. Clemons's criminal history, his previous problems on supervision, as well as the recommendation of the PSI author in this case." Clemons was sentenced to a term of imprisonment not to exceed fifteen years, with a three-year mandatory minimum before he would be eligible for parole.

We conclude the district court adequately expressed the reasons for Clemons's sentence as required by rule 2.23(3)(d). The statement of reasons given by the court is sufficient, as it "does not prevent review of the exercise of the trial court's sentencing discretion." *See id.* (citation omitted).

We affirm Clemons's conviction and sentence.

**AFFIRMED.**