# IN THE SUPREME COURT OF IOWA

No. 23–0055

Submitted March 20, 2024—Filed April 19, 2024

**STATE OF IOWA,**

    Appellee,

vs.

**CLAYTON CURTIS BROWN,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Boone County, Derek Johnson (trial) and John R. Flynn (sentencing), Judges.

The State seeks further review of a court of appeals decision reversing the defendant's convictions for possession of a firearm as a felon and aggravated eluding. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

**CHRISTENSEN, Justice.**

As the saying goes, "You can run, but you can't hide." That was certainly the case for this defendant, as he eluded a police officer's attempt to initiate a routine traffic stop by running a stop sign, speeding, and swerving through parking lots, only for the police officer to locate that same car abandoned on a side street about forty minutes later. The police officer obtained a warrant to search the car and subsequently discovered a loaded handgun under the driver's seat and ammunition in the center console and under the front passenger seat. A jury ultimately convicted the defendant of possession of a firearm as a felon, aggravated eluding, and driving while barred.

On appeal, the court of appeals reversed the defendant's convictions for possession of a firearm as a felon and aggravated eluding, concluding there was insufficient evidence to show the defendant knowingly possessed the handgun. We disagree and hold that the State's evidence—and all reasonable inferences from that evidence—was sufficient to support the jury's conclusion that the defendant had constructive possession of the firearm. Therefore, we vacate the portion of the court of appeals decision reversing those convictions and affirm the district court judgment in full.

**I. Background Facts and Proceedings.**

On September 29, 2021, Officer Joseph Slight observed a man driving a car without wearing a seat belt while he was on routine patrol in Boone at around 12:20 p.m. Officer Slight turned on his emergency lights to initiate a traffic stop, but the driver did not stop. Upon seeing the driver turn into an alleyway, Officer Slight turned on his sirens and continued to pursue the car. During the pursuit, he also maintained contact with dispatch, describing his belief that he was following C.H., a wanted person. The driver made a series of turns through parking lots and streets to escape, ran a stop sign, and accelerated his speed far beyond

the speed limit, prompting Officer Slight to stop his pursuit because he had a passenger with him.

Officer Slight located the car forty minutes later, parked, unlocked, and abandoned with valuable belongings inside. He ran the car's information through dispatch to discover that it had not been reported stolen. Officer Slight had the car seized and retrieved a search warrant for the car. This search uncovered personal items belonging to Clayton Brown, including a wallet in the cupholder that held Brown's debit card and a belt slung over the front passenger seat with Brown's name handwritten on it. Additionally, Officer Slight found a loaded handgun under the driver's seat with ammunition in the center console and under the front passenger seat. He also retrieved a cell phone with cash inside the phone case.

At some point, Officer Slight used Brown's name to look up his driver's license photo and recognized Brown—not C.H.—as the car's driver during the pursuit. He also learned that Brown's girlfriend was the car's owner. Consequently, the State charged Brown with possession of a firearm as a felon under Iowa Code section 724.26(1) (2021), a class "D" felony; aggravated eluding under Iowa Code section 321.279(3), a class "D" felony; and driving while barred under Iowa Code sections 321.560 and 321.561, an aggravated misdemeanor.

The case proceeded to a jury trial on September 20, 2022. Prior to trial, the parties stipulated the following: "1. On September 29, 2021, the defendant's driver's license was barred as a habitual offender. 2. On September 29, 2021, the defendant had previously been convicted of a felony." The district court read this stipulation to the jury before the State called its only witness, Officer Slight.

During Officer Slight's testimony, the prosecutor asked him why the gun in the car was "important or relevant to you through the course of this." Officer Slight responded, "Because there was convictions on his record that he should

not --," to which defense counsel interrupted, "Objection, Judge. Move to strike." The district court sustained the objection, and the prosecutor rephrased the question, asking Officer Slight, "From your check, did you learn that he had at least a prior felony?" Officer Slight answered, "Yes."

This prompted defense counsel to ask the district court to discuss the matter outside the jury's presence, where Brown moved for a mistrial. Brown argued that Officer Slight's mention of "convictions" resulted in "every juror know[ing] [Brown] has a greater criminal record than what we agreed to or what they should know about." The district court denied Brown's motion, explaining, "[Brown] stipulated to basically two convictions. I don't believe the evidence was two felony convictions. I don't believe the witness testified to multiple felony convictions. I think he just said 'convictions' plural." The district court offered to provide a curative instruction for the jury, but Brown indicated that was unnecessary.

After Officer Slight completed his testimony, Brown rested without presenting any evidence on defense. The jury found Brown guilty as charged on all three counts, and the district court sentenced Brown to indeterminate terms of incarceration for five years on each of the class "D" felony counts and two years on the aggravated misdemeanor. The district court ordered Brown to serve these sentences concurrently to each other but consecutively to his sentences in two other cases.

Brown appealed, and we transferred his case to the court of appeals. The court of appeals affirmed Brown's conviction for driving while barred, but it reversed his other convictions upon concluding there was insufficient evidence that Brown knowingly possessed a firearm. We granted the State's application for further review.

**II. Analysis.**

Brown raises three issues on appeal. First, he contends the district court should have granted his motion for mistrial based on Officer Slight's testimony that Brown had "convictions on his record." Second, Brown maintains there was insufficient evidence to support the jury's finding that he was driving the car that eluded Officer Slight. Finally, even if the evidence was sufficient to show that Brown was driving, he claims there was insufficient evidence that he knowingly possessed the firearm that was located underneath the driver's seat of the car.

**A. Brown's Motion for Mistrial.** Brown asserts that the district court should have granted his motion for mistrial based on Officer Slight's testimony that Brown had "convictions on his record" because this testimony exceeded the information about Brown's criminal history that was in the stipulation.[1] "[W]e review Brown's challenge to the district court's denial of a mistrial for an abuse of discretion." *State v. Brown*, 996 N.W.2d 691, 696 (Iowa 2023). In doing so, we give district courts "considerable discretion in ruling upon motions for mistrial, since they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury." *State v. Jirak*, 491 N.W.2d 794, 796 (Iowa Ct. App. 1992). Accordingly, we ordinarily only

---

[1]Brown's mistrial argument also raises evidentiary issues, characterizing Officer Slight's testimony as "either irrelevant or substantially more prejudicial than probative." Further, he contends Officer Slight's testimony violated the prohibition on bad acts evidence under our rules of evidence. Brown never raised these evidentiary objections with the district court when he moved for a mistrial, nor did he reference any of these rules or arguments in objecting to Officer Slight's testimony. He simply objected to the testimony without any explanation, and the district court sustained it. Therefore, we decline to address these arguments for the first time on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also State v. Trane*, 984 N.W.2d 429, 434–35 (Iowa 2023) (holding that the defendant waived his evidentiary concerns on appeal by failing to raise a proper specific objection before the district court).

find an abuse of discretion upon the denial of a mistrial "where there is no support in the record for the trial court's determination." *Id.* That is not the case here.

We agree with the district court that Brown "stipulated to basically two convictions" when he stipulated that: (1) he was a felon, and (2) his driving privileges had been barred for being a habitual offender. Brown's characterization of his barred driver's license as a habitual offender as merely a "refer[ence] to his licensing status" instead of a criminal conviction is a distinction without a difference. That he was barred for being *a habitual offender* necessarily implies repeated convictions. Iowa Code section 321.555's definition of "habitual offender" further supports this conclusion by defining the term as "any person who has accumulated *convictions* for separate and distinct *offenses* described in subsection 1, 2, or 3, committed after July 1, 1974, for which final *convictions* have been rendered." (Emphasis added.)

Thus, Officer Slight's isolated statement that Brown had "convictions" was cumulative to evidence already before the jury. Moreover, the district court acted quickly to sustain Brown's objection to this testimony. And it offered to provide the jury with a remedial instruction on the matter, but Brown informed the district court that such an instruction was unnecessary. *See, e.g., State v. Brown*, 397 N.W.2d 689, 699 (Iowa 1986) (en banc) ("Generally, trial court's quick action in striking the improper response and cautioning the jury to disregard it, coupled, when necessary, with some type of general cautionary instruction, will prevent any prejudice. A defendant who asserts these actions were insufficient bears the heavy burden of demonstrating a clear abuse of discretion on the part of [the] trial court."). Accordingly, nothing leads us to believe that the district court abused its discretion in denying Brown's motion for a mistrial.

**B. Sufficiency of the Evidence.** Brown contests the sufficiency of the evidence to support his convictions, arguing that the State failed to prove his identity as the driver of the car that eluded Officer Slight. Alternatively, even if the State presented sufficient evidence to show that he was the driver, Brown maintains there was insufficient evidence that he knowingly possessed the firearm that Officer Slight found tucked underneath the driver's seat in the car. We review these challenges "for the correction of errors at law, viewing the evidence in the light most favorable to the State." *Brown*, 996 N.W.2d at 695–96. This includes making "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)). There is sufficient evidence to support the jury's verdict "when the evidence 'would convince a rational fact finder the defendant is guilty beyond a reasonable doubt.' " *Id.* (quoting *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018)).

1. *Evidence of Brown's identity as the driver.* Brown asserts that the State failed to prove beyond a reasonable doubt that he was the driver who eluded Officer Slight, noting Officer Slight was behind the vehicle during the entire pursuit "and never close enough to see the driver's face well enough to make a positive identification." Brown also cites Officer Slight's acknowledgment that he originally believed a different person was driving. But Officer Slight explained during cross-examination why he initially believed the driver was a different person, in addition to how he identified Brown as the actual driver.

And contrary to Brown's claim, Officer Slight was not always directly behind the car, as the car was on a road perpendicular to the one Officer Slight was on when the driver first turned in front of Officer Slight. Additionally, Officer Slight still had the ability to see the driver's face through the car's rear and side

view mirrors when he was following it, which occurred in the daylight. This evidence, combined with Officer Slight's in-court identification of Brown as the same person he saw driving, his testimony that he found Brown's personal items in the vehicle about forty minutes after the chase, and the fact that Brown's girlfriend owned the car all support Officer Slight's identification of Brown as the driver.

"[I]t is not within the province of our court 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.' " *State v. Slaughter*, 3 N.W.3d 540, 550 (Iowa 2024) (quoting *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022)). The jury found Officer Slight's testimony credible and his explanations plausible. Especially viewing the evidence in the light most favorable to the State, which we do in challenges to the sufficiency of the evidence, there was sufficient evidence to support the jury's determination that Brown was driving the car when it eluded Officer Slight. *See Brown*, 996 N.W.2d at 695–96.

2. *Evidence that Brown knowingly possessed a firearm.* Brown insists that the State failed to prove that he knowingly possessed the handgun Officer Slight located in the car to support Brown's convictions for possession of a firearm as a felon and aggravated eluding. "Possession may be actual or constructive," and the State relied on the theory that Brown had constructive possession of the firearm. *State v. Jones*, 967 N.W.2d 336, 341 (Iowa 2021). "Constructive possession may be proved by inferences" and "turns on the peculiar facts of each case." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (quoting *State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002)). It "occurs when the defendant has knowledge of the presence of the [firearm] and has the authority or right to maintain control of it," and the district court instructed the jury accordingly. *State v. Carter*, 696 N.W.2d 31, 38–39 (Iowa 2005) (quoting *State v. Bash*, 670 N.W.2d 135, 138 (Iowa 2003));

*see also Reed*, 875 N.W.2d at 705 ("Although the doctrine of constructive possession evolved in drug-possession cases, we apply the same principles in firearm cases.").

Specifically, the jury instruction explained,

> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it. A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing.

Moreover, the instruction defined "[d]ominion and control" as "ownership or right to the firearm and the power or authority to manage, regulate or oversee its use." Thus, the State had to prove that Brown had the power and intention to exercise authority over the firearm's use.

"Constructive possession is recognized by inferences," and we have identified nonexclusive factors to consider in making this determination. *State v. Maxwell,* 743 N.W.2d 185, 193–94 (Iowa 2008); *see also Reed*, 875 N.W.2d at 706. Those factors include:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a [firearm] among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the [firearm]; and (4) any other circumstances linking the person to the [firearm].

*Reed*, 875 N.W.2d at 706 (quoting *State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013)). And when the "premises" where the contraband is located is a motor vehicle, we have explained,

> a court may consider these additional factors: (1) was the [firearm] in plain view, (2) was it with the accused's personal effects, (3) was it found on the same side of the car seat as the accused or immediately next to him, (4) was the accused the owner of the vehicle, and (5) was there suspicious activity by the accused.

*Carter*, 696 N.W.2d at 39.

True, some of these factors weigh in Brown's favor. For instance, there was no evidence of incriminating statements or fingerprints connecting Brown to the firearm or the ammunition discovered in the car. *See Reed*, 875 N.W.2d at 706. Likewise, Brown was not the car's registered owner, nor was he in the car when Officer Slight discovered the firearm. *See id.*; *see also Carter*, 696 N.W.2d at 39.

Yet, there was ample evidence to support the jury's conclusion that Brown had constructive possession of the firearm beyond a reasonable doubt—especially viewing this evidence in the light most favorable to the State. *See Brown*, 996 N.W.2d at 695–96. Much of that evidence is comparable to the evidence supporting the constructive possession of a controlled substance in *State v. Maxwell. See* 743 N.W.2d 185. That case also involved a police officer's pursuit of a defendant after the officer observed the defendant drive out of a parking lot without a seat belt on and attempted to initiate a traffic stop. *Id.* at 188–89. Like Brown, the defendant continued driving and eventually parked and walked away from his vehicle. *Id.* at 189. When the officer searched the vehicle soon thereafter, he discovered a plastic baggie protruding from a cigarette pack between the two front seats that contained cocaine, leading to the defendant's conviction for possession of a controlled substance with intent to deliver. *Id.*

In affirming the verdict based on a theory of constructive possession, we noted many similar factors to the evidence in Brown's case. *See id.* at 194. For example, we explained that the defendant was the only person in the vehicle from the time the officer saw the vehicle pull out of a parking lot until the officer apprehended him. *Id.* Here, the jury could equally infer that Brown was the most recent driver of the car—and the sole person in the car—throughout the pursuit and in the brief period between the pursuit and police seizure. We have previously held that "[t]his circumstance is relevant to the constructive possession analysis, even if it does not amount to exclusive possession entitling the State to

the inference discussed." *State v. Dewitt*, 811 N.W.2d 460, 475–76 (Iowa 2012). Brown's "frequent and recent use of the car remains pertinent, though not dispositive," even though he did not own the car. *Id.* at 476. Likewise, evidence linked Brown to the car as the owner's boyfriend.

Additional evidence supporting the verdict in *Maxwell* was that the officer found the drugs immediately next to where the defendant had been sitting, as they were lodged between his seat and the front passenger seat. 743 N.W.2d at 194. Here, too, the jury could reasonably infer Brown's knowledge of the firearm's presence in the car and his dominion and control over it based on the location of the firearm directly under the seat where Brown had recently been sitting to drive. As Officer Slight testified, the firearm was "tucked back a little bit, but just close enough [for the driver] to be able to grab." *See Carter*, 696 N.W.2d at 39 (stating one factor supporting constructive possession is whether the item was found where the accused was sitting).

Moreover, the presence of Brown's personal effects strewn about in the car next to the ammunition supports the State's theory of constructive possession. Officer Slight found ammunition under the front passenger seat, which had Brown's belt with his handwritten name slung over it. And Brown's wallet containing his debit card was in the cupholder next to the center console compartment in which Officer Slight similarly discovered ammunition for the firearm. *See id.* (noting one factor supporting constructive possession is whether the item was found with the accused's personal effects); *see also Reed*, 875 N.W.2d at 706 (explaining one factor to consider in determining constructive possession is any circumstances linking the person to the item).

And although it is not as compelling given Brown had additional reasons to flee because he was driving while barred, both the defendant in *Maxwell* and Brown made the decision to flee when the police attempted to initiate a traffic

stop. *See* 743 N.W.2d at 194. Brown's suspicious decision to flee is also similar to the situation in *State v. Thomas*. *See* 847 N.W.2d 438 (Iowa 2014). There, police entered an apartment with six people inside, but only the defendant ran into a bedroom upon their arrival, attempted to hold the door shut, and gave a false name. *Id.* at 440–42. The police subsequently found drugs where the defendant had been holding the door, and we affirmed the defendant's conviction for possession based on a theory of constructive possession. *Id.* at 439, 447. In doing so, we reasoned, "The defendant was the person who had been most recently in the spot where the drugs were found, his conduct prior to his arrest was highly suspicious and makes sense only if his goal was to get the drugs off of his person, and he offered resistance." *Id.* at 444.

Much of that logic applies here. The court of appeals disagreed and reversed Brown's convictions by hypothesizing that Brown's decision to elude Officer Slight "could have been related to driving while barred as [a] habitual offender—he had reason for a guilty conscience even without knowingly possessing the handgun." We have said that "the probative value of evidence showing a defendant avoided apprehension turns on the circumstances under which the avoidance occurred." *State v. Wilson*, 878 N.W.2d 203, 213 (Iowa 2016). Here, the evidence showed the defendant engaged in quite a serious effort to avoid being stopped by Officer Slight. "[T]he State need not discredit every other potential theory to be drawn from circumstantial evidence." *Ernst*, 954 N.W.2d at 57; *see also Jones*, 967 N.W.2d at 342 ("Whether the State's evidence is direct, circumstantial, or some combination of the two, the State is not required to negate any and all rational hypotheses of the defendant's innocence."). That is also the case "when a jury makes inferences from the evidence presented at trial." *Ernst*, 954 N.W.2d at 57. Further, while the jury was free to reach the same conclusion regarding Brown's decision to flee as the court of appeals did, "[e]vidence is not insubstantial merely because we may draw different conclusions

from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Jones*, 967 N.W.2d at 339 (quoting *Brokaw v. Winfield–Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010)); *see also Wilson*, 878 N.W.2d at 215 ("Once a district court admits such evidence [of flight], it is for the jury to decide whether to credit the inferential chain leading from a particular act of the defendant to guilt for the crime charged.").

As the district court expressed, it was just as logical for the jury to

> find that it does not make sense for an individual to commit multiple additional driving offenses such as eluding, stop sign violations, and speeding, in order to avoid being charged with or delay being charged with driving while barred. Based upon the dangerous operation of the motor vehicle in an attempt to get away from law enforcement, the jury was able to conclude that the Defendant's flight was done in an effort to prevent detection of the firearm by law enforcement. The jury was aware that the Defendant's license was barred, but the jury weighed the evidence and determined that the Defendant committed the offense of eluding because he was knowingly possessing a firearm as a felon. Furthermore, the jury could conclude that since Defendant was witnessed operating a motor vehicle in broad daylight by a police officer that the Defendant likely believed he would be charged with driving while barred, but since the officer was not able to see the gun that the Defendant needed to flee or buy more time to hide the gun.

In summary, considering the evidence in the light most favorable to the jury's verdict, the jury's verdict is supported by logical inferences drawn from the record rather than impermissible speculation. *See Jones*, 967 N.W.2d at 342. Consequently, we vacate the portion of the court of appeals decision reversing Brown's convictions for possession of a firearm as a felon and aggravated eluding and affirm the judgment of the district court.

### III. Conclusion.

We affirm all three of Brown's convictions.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**